UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| WILLIE JAMES WITHERSPOON, JR., ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | No. 2:24-cv-00016-JMS-MJD |
| ) | |
| ALICE TRINKLE, *Correctional Officer*, JASON JOBE, ) | |
| CHELSA HENDERSON, and T. BEGEMAN, ) | |
| ) | |
| *Defendants.* ) | |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*Pro se* Plaintiff Willie James Witherspoon, Jr. is incarcerated at Wabash Valley Correctional Facility ("WVCF") and alleges that Defendants Alice Trinkle, Jason Jobe, Chelsa Henderson, and T. Begeman (all Correctional Officers at WVCF) violated his constitutional rights during an incident in which Narcan was administered to him and also by seizing rainbow-colored property from his cell because he is transgender.[1] Mr. Witherspoon asserts: (1) Eighth Amendment excessive force and/or failure to intervene claims against all Defendants in their individual capacities only based on his allegations related to the administration of Narcan; (2) state law negligence claims against all Defendants based on his allegations related to the administration of Narcan; and (3) a Fourteenth Amendment Equal Protection claim against Officer Trinkle in her individual capacity only based on his allegations that she wrongfully seized and/or destroyed property in his cell due to him being a transgender inmate.[2] [*See* Filing No. 14.] Defendants have

---

[1] The Court understands that Plaintiff identifies as a transgender inmate. Absent clear indication of Plaintiff's preferred pronouns, the Court refers to Plaintiff as "Mr. Witherspoon" and "he" in this Order.

[2] The Court screened Mr. Witherspoon's Complaint pursuant to 28 U.S.C. § 1915A. [Filing No. 14.]

1

filed a Motion for Summary Judgment for Failure to Exhaust Administrative Remedies. [Filing No. 33.] Mr. Witherspoon did not respond to Defendants' Motion and the Motion is ripe for the Court's consideration.

## I.
## STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

Mr. Witherspoon failed to respond to the summary judgment motion. Accordingly, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see also* S.D. Ind. L.R. 56-1(b) (party opposing summary judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for summary judgment, the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up).

## II.
### FACTUAL BACKGROUND

The Court sets forth only the facts relevant to whether Mr. Witherspoon exhausted his administrative remedies – the only issue raised in Defendants' Motion for Summary Judgment. The facts stated below are presented by Defendants, supported by the record, and admitted by Mr. Witherspoon for the purpose of summary judgment since he did not respond to the Motion for Summary Judgment. S.D. Ind. L.R. 56-1(f).

**A.    WVCF's Grievance Procedure**

WVCF had a grievance procedure in place at the time that Mr. Witherspoon alleges that Defendants violated his constitutional rights. [Filing No. 33-1 at 2.] Specifically, Indiana Department of Correction ("IDOC") Policy and Administrative Procedures 00-02-301 (the "Offender Grievance Process") governs the grievance process and provides details regarding how an inmate must exhaust his administrative remedies using that process. [Filing No. 33-1 at 2-3; Filing No. 33-2.] The Offender Grievance Process is the only process recognized by the IDOC for the resolution of an inmate's grievable issues. [Filing No. 33-1 at 3.]

An inmate can obtain grievance forms from staff working on his housing unit, from the Grievance Specialist, or from the facility's law library. [Filing No. 33-1 at 3.] The Offender Grievance Process provides that inmates can submit grievances over matters concerning the

3

policies, procedures, and rules of the IDOC or the facility, including the actions of individual staff members; the manner in which the staff members apply IDOC policies, procedures, or rules; the Prison Rape Elimination Act; and any other concerns or issues related to the conditions of care or supervision.  [Filing No. 33-1 at 3; Filing No. 33-2 at 3.]  The Offender Grievance Process includes a formal attempt to solve the problem or concern after unsuccessful attempts at informal resolution; a written appeal to the Warden/designee; and a written appeal to the IDOC Grievance Manager.  [Filing No. 33-1 at 3-4; Filing No. 33-2 at 3.]  Only grievances that are adequate and appropriate to submit to the grievance process are recorded into the computer system and assigned a grievance number.  [Filing No. 33-1 at 4-5; Filing No. 33-2 at 10.]

Before filing a grievance, an inmate is required to attempt to resolve a complaint informally.  [Filing No. 33-1 at 3-4; Filing No. 33-2 at 3.]  If that is unsuccessful, the inmate can submit a formal grievance by completing a State Form 45471 ("Grievance Form") and submitting it to the Grievance Specialist no later than ten business days from the date of the incident giving rise to the complaint or concern.  [Filing No. 33-1 at 4; Filing No. 33-2 at 9.]  The Grievance Specialist then reviews the Grievance Form within ten business days of receiving it and will either accept and record it or reject it.  [Filing No. 33-1 at 4; Filing No. 33-2 at 10.]  If the Grievance Form did not meet the requirements of the Offender Grievance Policy, the Grievance Specialist responds by providing a Return of Grievance form to the inmate, which includes an explanation of why the Grievance Form was returned and how it may be corrected.  [Filing No. 33- 1 at 4; Filing No. 33-2 at 10.]  The inmate is then responsible for making the necessary revisions to the Grievance Form and returning the revised Grievance Form to the Grievance Specialist within five business days from the return date.  [Filing No. 33-1 at 4; Filing No. 33-2 at 10.]  Once an adequate Grievance Form is received, the Grievance Specialist has fifteen business days to investigate the

4

grievance and provide a response to the inmate, unless the time has been extended. [Filing No. 33-1 at 4-5; Filing No. 33-2 at 10.] If the inmate does not receive a response to his Grievance Form within twenty days from when the Grievance Specialist received it, the inmate may appeal as if the grievance had been denied. [Filing No. 33- 1 at 5; Filing No. 33-2 at 12.]

It is the inmate's responsibility to review the grievance response and determine whether the response adequately addresses the issues raised in the grievance. [Filing No. 33-1 at 5; Filing No. 33-2 at 12.] If an inmate is dissatisfied with the grievance response, he may appeal the response to the Warden/designee at the facility level by submitting a State Form 45473 ("Grievance Appeal"). [Filing No. 33-1 at 5-6; Filing No. 33-2 at 12.] The Grievance Appeal is submitted to the Grievance Specialist within five business days after the inmate receives the grievance response and must state why the grievance response was unacceptable. [Filing No. 33-1 at 5-6; Filing No. 33-2 at 12.] The Warden's/designee's response to the Grievance Appeal must be completed within ten business days of receipt of the Grievance Appeal. [Filing No. 33-1 at 6; Filing No. 33-2 at 13.]

If an inmate wishes to appeal the Warden's/designee's response to his Grievance Appeal, he may appeal to the Department Offender Grievance Manager as described in the Offender Grievance Policy. [Filing No. 33-1 at 6; Filing No. 33-2 at 13-14.] The decision of the Department Offender Grievance Manager is final. [Filing No. 33-1 at 6-7; Filing No. 33-2 at 13.] Exhaustion of the Grievance Procedure requires filing an appeal to the Department Offender Grievance Manager. [Filing No. 33-1 at 7.]

B.     **Mr. Witherspoon's Grievances**

Mr. Witherspoon filed two grievances related to the events underlying this lawsuit. [Filing No. 33-1 at 9.] First, he submitted a grievance on August 28, 2023 in which he complained about an August 26, 2023 incident where he was administered Narcan multiple times. [Filing No. 33-4

5

at 2.] He requested "[t]he proposed unfounded class B write up to be looked at as a non-medical misdiagnosis," that "no write up…be given," and that there be "no retaliation." [Filing No. 33-4 at 2 (emphasis omitted).] A Return of Grievance form was provided to Mr. Witherspoon on August 31, 2023 which stated: "RETURN – THERE IS A SEPARATE APPEALS PROCESS FOR WRITE-UPS. COMPLETE A DHB APPEAL FOR THIS PURPOSE," and "Cannot be grieved/has independent appeals process." [Filing No. 33-4 at 1.]

On September 7, 2023, Mr. Witherspoon filed a second grievance in which he set forth essentially the same allegations as in his first grievance, but requested different relief. [Filing No. 33-4 at 8.] He stated: "My previous grievance…was also on this matter. I would not like to appeal the write up. I would like officers to follow proper policy and procedures when diagnosis [is] medical or non-medical. Could they be trained to not assess every situation as if someone is under the influence." [Filing No. 33-4 at 8.] On September 21, 2023, Mr. Witherspoon was provided with a Grievance Response which explained the Grievance Specialist's position that correctional staff had acted appropriately and stated: "You may elect to appeal the decision of the Grievance Specialist to the Warden or Warden Designee…within five (5) workdays from receipt of the above response to the Grievance Specialist by [e]nsuring the grievance procedure within their assigned unit and institution has been exhausted." [Filing No. 33-4 at 4.] There is no record of Mr. Witherspoon appealing the Grievance Specialist's decision. [Filing No. 33-1 at 10.] There is also no record that Mr. Witherspoon exhausted his administrative remedies regarding the issues he raises in this litigation. [Filing No. 33-1 at 10.]

    **C.**    **The Lawsuit**

Mr. Witherspoon initiated this litigation on January 10, 2024. [Filing No. 1.] The Court screened his Complaint pursuant to 28 U.S.C. § 1915A, and found that the following claims would

proceed: (1) Eighth Amendment excessive force and/or failure to intervene claims against all Defendants in their individual capacities only based on his allegations related to the administration of Narcan; (2) state law negligence claims against all Defendants based on his allegations related to the administration of Narcan; and (3) a Fourteenth Amendment Equal Protection claim against Officer Trinkle in her individual capacity only based on his allegations that she wrongfully seized and/or destroyed property in his cell due to him being a transgender inmate. [Filing No. 14.] Defendants have filed a Motion for Summary Judgment that relates only to Mr. Witherspoon's failure to exhaust his administrative remedies. [Filing No. 33.]

### III.
#### DISCUSSION

At the outset, the Court notes that Mr. Witherspoon did not respond to Defendants' Motion for Summary Judgment. The Court could grant Defendants' Motion on that basis alone, S.D. Ind. L.R. 7-1(c)(5) ("[t]he court may summarily rule on a motion if an opposing party does not file a response within the deadline"), but prefers to rule on the merits of motions and so will consider Defendants' arguments below.

In support of their Motion for Summary Judgment, Defendants argue that Mr. Witherspoon's claims are barred under both the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"), and Indiana common law because he failed to file a written appeal related to his allegations and so did not exhaust the Offender Grievance Process. [Filing No. 34 at 12.] Defendants note that Mr. Witherspoon completed the first step of the Offender Grievance Process by filing a formal grievance, but then failed to appeal the grievance response to the Warden/designee at the facility level by not submitting a Grievance Appeal within five business days after receiving the grievance response. [Filing No. 34 at 12-13.] Defendants also note that Mr. Witherspoon would then have been required to appeal to the Department Offender Grievance

7

Manager after receiving the Warden's/designee's response, which he did not do. [Filing No. 34 at 13.] They assert that "Mr. Witherspoon cannot demonstrate that he was unaware of this requirement." [Filing No. 34 at 14.]

### A.     Federal Claims

The PLRA requires that a prisoner exhaust available administrative remedies before suing over prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted).

"To exhaust available remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020). "[A] prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)). "Because exhaustion is an affirmative defense," Defendants must show that "an administrative remedy was available and that [Mr. Witherspoon] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015).

Defendants have met their burden of proving that Mr. Witherspoon "had available [administrative] remedies that he did not utilize." *Dale*, 376 F.3d at 656. In connection with his first grievance, Defendants have presented evidence that Mr. Witherspoon did not revise and resubmit his Grievance Form based on the information contained in the Return of Grievance Form in order to move the administrative process forward. As for his second grievance, Defendants have presented evidence that Mr. Witherspoon did not take the next step in the

8

Offender Grievance Process by appealing the Grievance Specialist's response to the Warden/designee at the facility level, which required submitting a Grievance Appeal.

As a result, Mr. Witherspoon did not complete the available administrative process as required by the PLRA before asserting federal claims in this lawsuit. *Reid*, 962 F.3d at 329. The consequence of his failure to exhaust his administrative remedies, in light of 42 U.S.C. § 1997e(a), is that his federal claims against Defendants must be dismissed without prejudice. *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (holding that "all dismissals under § 1997e(a) should be without prejudice") (emphasis omitted). The Court **GRANTS** Defendants' Motion for Summary Judgment as to Mr. Witherspoon's federal claims and **DISMISSES** those claims **WITHOUT PREJUDICE**.

  **B.** **State Law Claims**

Because the Court has dismissed Mr. Witherspoon's federal claims, it first considers whether it will exercise supplemental jurisdiction over his remaining state law negligence claim. That decision is within the Court's discretion. 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim…if…the district court has dismissed all claims over which it has original jurisdiction."); *see also Carlsbad Tech., Inc., v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise supplemental jurisdiction after dismissing every claim over which it had original jurisdiction is entirely discretionary."). "Indeed, when the federal claims are dismissed before trial, there is a presumption that the court will relinquish jurisdiction over any remaining state law claims." *Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016).

When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in every case, and at every stage of the litigation, the values of judicial

9

economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quotations and citations omitted). In the Seventh Circuit, "the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); *see also Sharp Elecs. v. Metropolitan Life Ins.*, 578 F.3d 505, 514 (7th Cir. 2009) ("Normally, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.") (quotation and citation omitted). Exceptions to the general rule exist: "(1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided." *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008) (quotation and citation omitted).

Here, it is absolutely clear how Mr. Witherspoon's negligence claim should be decided so the Court, in its discretion, exercises supplemental jurisdiction over that claim. Under Indiana law, "[a] claimant who has an available administrative remedy must pursue that remedy before being allowed access to the courts." *Higgason v. Lemmon*, 818 N.E.2d 500, 503 (Ind. Ct. App. 2004). Indiana's exhaustion doctrine does not differ significantly from the PLRA's exhaustion doctrine, *see id.* at 503-04, and mandates dismissal of Mr. Witherspoon's remaining negligence claim against Defendants for the same reasons discussed above in connection with the failure to exhaust administrative remedies for his federal claims. The Court **GRANTS** Defendants' Motion for Summary Judgment as to Mr. Witherspoon's state law negligence claim and **DISMISSES** that claim **WITHOUT PREJUDICE**.

## IV.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies, [33], and **DISMISSES** Mr. Witherspoon's claims **WITHOUT PREJUDICE**. Final judgment shall enter accordingly.

Date: 5/9/2025

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

**Distribution via United States Mail to:**

Willie James Witherspoon, Jr.
#281624
Wabash Valley Correctional Facility
6908 S. Old U.S. Hwy. 41
Carlisle, IN 47838